472 P.2d 680 (1970)
Paris ENGLER, Plaintiff in Error,
v.
Ira HATCH, Defendant in Error.
No. 70-095. (Supreme Court No. 23503.)
Colorado Court of Appeals, Div. II.
June 23, 1970.
Rehearing Denied July 2, 1970.
*681 Emigh & Emigh, A. M. Emigh, Durango, for plaintiff in error.
Hamilton & Hamilton, E. B. Hamilton, Durango, for defendant in error.
Not Selected for Official Publication.
DWYER, Judge.
This case was originally filed in the Supreme Court of the State of Colorado and subsequently transferred to the Court of Appeals under authority vested in the Supreme Court.
The plaintiff in error, Engler, prosecutes this writ of error seeking a reversal of a judgment recovered against him by the defendant in error, Hatch, in an action to recover damages for trespass. The parties will be referred to as plaintiff and defendant as they appeared in the trial court.
Plaintiff was the owner of a 600 acre tract of grazing land located in La Plata County. Defendant was the owner of a 960 acre tract of land which adjoined plaintiff's land. These two tracts were so situated that the only practical access to the county road from defendant's land was across plaintiff's land.
In 1935, plaintiff's predecessor in title conveyed by deed to defendant's predecessor in title an easement or right of way for a private road upon and across the premises owned by plaintiff. This deed was not recorded until June 6, 1951, which was after plaintiff had acquired his title. On August 17, 1951, plaintiff, through his attorneys, notified defendant that he denied the validity of the claimed easement.
In 1952, Weidman, Inc., secured from the Bureau of Land Management the right to cut timber on land which adjoined defendant's land. The only practical access to this timber was across the lands owned by plaintiff and defendant. Weidman obtained from defendant a permit to "use his access road across the property [of plaintiff] * * * to permit access where necessary to reach sale [of timber]." Thereafter, Weidman entered upon plaintiff's land, bulldozed a road, removed trees and otherwise enlarged and improved upon defendant's claimed right of way, and used the new road to remove timber from the government land.
Plaintiff filed no action against Weidman, but commenced this action alleging that defendant "or others acting on his authority, encouragement, or direction, or both, wrongfully and unlawfully and with force, broke and entered upon, committed trespasses upon and cut roads across" the lands of the plaintiff. Defendant denied the trespass. He affirmatively alleged that he had an easement or right of way across plaintiff's land; that the road across plaintiff's land was well defined; and that plaintiff had actual notice of such road.
There were two trials of this action before different judges. At the first trial, the court found that the plaintiff acquired his title without notice, actual or constructive, of defendant's easement, and that defendant had authorized Weidman to use the easement after he had been notified by plaintiff's attorney that the easement was invalid. The court found that defendant had committed a trespass, but that plaintiff had failed to establish any damage. Judgment was entered for nominal damages ($1.00) and exemplary damages ($500). Thereafter, on plaintiff's motion, the court ordered a new trial.
After the first trial, the plaintiff entered into a contract with Weidman which authorized Weidman to use the road which had been constructed on plaintiff's land. Weidman agreed to pay plaintiff for the right to use the road and he further agreed that upon completion of his use of the road he would "repair all damage done whether heretofore or hereafter occasioned."
Before the second trial, defendant filed a supplemental answer alleging that plaintiff's damages had been fully and completely "mitigated."
*682 At the second trial, Weidman testified that he had paid $464 to plaintiff for the use of the road and that he had repaired the damage to plaintiff's land at a cost of $1,000. However, the court held that the defense of "mitigation of damages" was unavailable to defendant because the money which Weidman paid to the plaintiff and the restoration work which Weidman performed was in consideration of a license for Weidman's future use of the road, and the contract specifically preserved plaintiff's right of action against Weidman for damages arising out of Weidman's previous trespass.
Plaintiff presented no additional evidence at the second trial and relied solely on the record of the first trial. This record was admitted in evidence by stipulation. The court entered a judgment against defendant in the amount of $3,395, computed as follows:

 525 pine trees at $3.00___________ $1,575
 356 aspen trees at $1.00 _________ 356
 Cost of restoring and reseeding ___ 1,000
 Amount paid Hatch [plaintiff] by
 Weidman for use of the road _______ 464
 _______
Total ______________________________ 3,395

The trial court also awarded exemplary damages in the amount of $500 and interest on the judgment from the date of the filing of the complaint.
Of plaintiff's assignments of error, four are considered sufficiently important to require consideration. (1) The court erred in finding that the defendant authorized, caused or ratified the trespass by Weidman; (2) the plaintiff's evidence concerning damages caused by destruction of trees is too speculative and uncertain to support a judgment; (3) the court erred in allowing interest from the date of the filing of the complaint; and (4) the award of exemplary damages was not justified.

I.
The deed which defendant had to the easement over plaintiff's land was not recorded at the time plaintiff acquired his title. Also, the court found that plaintiff had no actual notice of the easement and, that as against the plaintiff, defendant's easement was invalid. We see no basis on which to disturb such findings.
The defendant's liability for the trespass is based upon the court's finding that he had authorized, encouraged, directed and ratified the trespass. The applicable general rule is stated in Am.Jur. Trespass § 33:
"Any person who aids, abets, encourages, or authorizes another in the commission of a trespass, even though not personally present at its commission, is liable equally with him who commits it. However, whether, on the ground that he authorized the trespass, a seller or lessor of the property of another is liable to the true owner as a cotrespasser together with his grantee or lessee is a question which appears to depend upon the circumstances of the particular case."
Neither side has cited a case similar in factual situation to the instant one. The defendant did authorize Weidman to enter upon the plaintiff's land. He knew that Weidman intended to use plaintiff's land for the purpose of hauling timber. He gave Weidman permission to do so after he had been advised by plaintiff's lawyer that the plaintiff did not recognize his easement. He thereafter received payment for the use of the roads which Weidman constructed. These facts are sufficient to support the court's finding that defendant was a trespasser.

II.
The measure of damages for trespass to real estate is in most cases the difference in the market value of the land before and after the trespass. Frankfort Oil Company v. Abrams, 159 Colo. 535, 413 P.2d 190. However, this rule is not the invariable measure of damages in trespass cases and will not be applied where it would not do substantial justice. Big Five Mining Co. v. Left Hand Ditch Co., 73 Colo. 545, 216 P. 719.
*683 In this case, the plaintiff did not prove that the market value of his land was in any way diminished by the roads constructed on his land. Defendant produced testimony that the land was worth $20.00 per acre both before and after the trespass. In these circumstances, the difference of market value before and after the trespass is not the proper measure of damages.
The Colorado Supreme Court in the recent case of Bobrick v. Taylor, Colo., 467 P.2d 822, considered the question of the measure of damages in a trespass case. In that case, there was a trespass on the plaintiff's lot where a bulldozer was used to change the slope of the land. The court held that the proper measure of damages was the cost of replacing the soil removed and the cost of constructing a retaining wall to hold it in place. The measure of damages approved in Bobrick v. Taylor is the proper measure in this case. The court found that the "cost of reseeding and restoring the roads was $1,000," and that portion of the judgment based on this finding was proper.
There is no evidence in the record which suports the court's finding that trees of the value of $1931 were destroyed. The only testimony in this respect was that of the plaintiff and one other witness who testified that at the time they made their count of the trees more than a year after the trespass they could not determine the sizes of the trees that were destroyed and that they had to guess as to the number. There is other testimony in the record that all of the trees of commercial value had been removed from this land before the plaintiff purchased it. Accordingly, that portion of the judgment allowing damages for the value of trees allegedly destroyed is reversed. It was also erroneous to allow the plaintiff to recover from the defendant the sum of $464 which is the amount Weidman paid plaintiff for the use of the road pursuant to the permit issued by plaintiff to Weidman after this action was instituted.

III.
The defendant's lack of intent to commit a trespass was not a defense to the action for trespass. Little Pittsburg Consol. Mining Co. v. Little Chief Consol. Mining Co., 11 Colo. 223, 17 P. 760; Haines v. Fearnley, 56 Colo. 243, 138 P. 541. However, such lack of intent is a defense to the claim for exemplary damages. In Rosenbaum v. Mathews, 113 Colo. 307, 156 P.2d 843, the plaintiff and defendant owned adjoining lands and the latter constructed an irrigation ditch across the former's premises. Plaintiff brought an action for trespass and recovered both actual and exemplary damages. The Supreme Court affirmed the award of actual damages but reversed the exemplary damages. The court held that since the defendants believed they were entitled to a right of way for their lateral they could not be held liable for exemplary damages for doing what they believed they had a legal right to do.
The evidence in this case is insufficient to show "fraud, malice or insult, or a wanton and reckless disregard of the injured party's rights and feelings" which will support a judgment for exemplary damages under C.R.S. 1963, 41-2-2, and accordingly, that portion of the judgment allowing exemplary damages in the amount of $500 is reversed.

IV.
The trial court allowed interest on the damages from the date of the filing of the complaint. The parties concede that this allowance is not authorized by C.R.S. 1963, 41-2-1.
That portion of the judgment allowing plaintiff damages in the sum of $1,000 for the repair and restoration of his premises is affirmed. The other portions of the judgment are reversed. Accordingly, this cause is remanded to the trial court with directions to enter judgment in favor of the plaintiff and against the defendant in *684 the sum of $1,000 with interest from the date of the entry of judgment upon the second trial of this action.
COYTE and DUFFORD, JJ., concur.